THE PEOPLE ex rel. CHARLES M. HIGGINS, Relator, *v.* HAVEN EMERSON, as Commissioner of Health of the City of New York, Respondent.

(Supreme Court, Kings Special Term, January, 1918.)

Boards of health — actions — who may sue and be sued — mandamus — certificate of death — taxpayers — Greater New York Charter, §§ 1175, 1192, 1545.

Under section 1192 of the Greater New York Charter the board of health must sue and be sued in and by the proper name of the department of health of the city of New York and not in or by the name of the members of said board or any of them, and an application under section 1545 of said charter, which so far as the board of health is concerned is limited and modified by section 1175 of said charter, for a peremptory writ of mandamus commanding the commissioner of health of said city to furnish and deliver to relator, a taxpayer, true and certified transcripts or copies of the certificates of death in certain fatal cases of tetanus occurring in the city in the year 1915, will be denied.

APPLICATION for a peremptory writ of mandamus.

Francis A. Doyle, for relator.

William P. Burr, corporation counsel (William T. Kennedy, of counsel), for respondent.

ASPINALL, J. This is an application for a peremptory writ of mandamus to command the commissioner of health of the city of New York to furnish and deliver to the relator herein true and certified transcripts or copies of the certificates of death in thirty-three fatal cases of tetanus, occurring in the city of New York in the year 1915.

This motion is instituted upon the theory that, under

section 1545 of the Greater New York Charter, any taxpayer has the absolute and unqualified right to obtain certified copies of any of the records of the board of health.

I deny the application and dismiss this proceeding upon two grounds, as follows:

*First.* For the reason that the motion is instituted against Haven Emerson, as commissioner of health of the city of New York, and not against the department of health of the city of New York, as provided for by section 1192 of the charter, which reads as follows: " Said board of health may sue and be sued in and by the proper name of ' The Department of Health of The City of New York,' and not in or by the name of the members of said board, or any of them."

*Second.* For the reason that section 1545 of the charter of the city of New York is limited and modified, so far as the board of health is concerned, by section 1175 of the charter of the city of New York.

By section 1175 of the charter, the legislature conferred upon the board of health the power to determine whether the public welfare would be subserved, or otherwise, by the publication of information relating to births, deaths, marriages and other specified matters. It is of course apparent that such information could be obtained by inspection of the public records by any person who desired to use the information so obtained for publicity purposes subject, however, to any reasonable rules and regulations. To effectuate the legislative intent that questions of publicity should rest in the discretion of the board of health, and to prevent the will of the board, in this respect, from being thwarted by an individual, section 1175 of the charter confers the power upon the board to provide " reasonable regulations " regulating the matter. Such a resolution was adopted by the board

on October 28, 1903. This resolution regulates the right of inspection of papers, files, reports and records, and the regulations so adopted are presumably the regulations declared, in *Matter of Allen,* 205 N. Y. 158, not to exceed the discretionary power of the board. The presumable purpose and certainly the effect of these regulations is to prevent an individual from obtaining information for the purpose of publicity only.

It seems plain, therefore, that under the regulations so adopted by the board of health, and declared by the Court of Appeals in the *Allen* case to be reasonable, the board would have had power to deny the relator the privilege of an inspection of the record of the deaths in question for the avowed purpose of publishing the information so obtained.

But the relator claims that section 1545 of the charter is " properly divisible; " that the portion of the section relating to a " copy" of a record is severable from the latter part of the section, which relates to an inspection, and that the rules and regulations adopted by the board properly apply to a case where an inspection is desired. The adoption of this view would, it seems to me, nullify the provisions of section 1175 of the charter. The purpose of that section was, in my opinion, to clothe the board of health with discretionary power over matters relating to publicity, and the intent of the legislature in this respect would be plainly frustrated if information, which, under the regulations referred to, cannot be obtained by an inspection, could be obtained by means of a copy. In other words, it was not the legislative intent that an individual, who disagreed with the policy of the board of health in matters relating to the publishing of certain information, might accomplish, indirectly, by means of a copy of a record, a result which he would

not be permitted to accomplish, directly, by means of a personal inspection. So far as these statutes relate to publicity, the discretionary power vested in the board of health necessarily carries with it the power to deny a copy of a record in cases where an inspection would not be permitted; and an inspection would not be permitted in cases where the purpose thereof fairly appeared to be to acquire information for publicity purposes only against the desire of the board of health.

Motion denied.